Joseph Henry PYLES, Jr., a Minor,
Respondent,

v.

Michael Philip ROTH, Defendant,

and

James McDowell Dawkins, Appellant.

No. 52346.

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1967.

Motion to Modify Opinion or for Rehearing
or to Transfer to Court En Banc
Denied Dec. 11, 1967.

Dales Reesman, Boonville, for respondent.

William H. Sanders, Dean F. Arnold, David C. Trowbridge, Kansas City, for appellant Dawkins, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel.

DONNELLY, Judge.

In this jury-tried action for damages resulting from a vehicular collision in Cole County, Missouri, which occurred at approximately 5:55 p.m. on August 18, 1963, plaintiff, Joseph Henry Pyles, Jr., received a verdict in the amount of $20,000 against defendants Michael Roth and James Dawkins. Dawkins appealed.

The collision causing plaintiff's injuries occurred on Missouri State Highway No. 179, which extends generally east and west, and involved vehicles driven by Michael Roth, Kenneth Murphy, Ronald Buster, and James Dawkins.

Roth was traveling in a westerly direction. Pyles was a passenger in the Roth car. Murphy, Buster, and Dawkins were

traveling in an easterly direction with Murphy in front, Buster following Murphy at an undetermined distance, and Dawkins following Buster. Roth testified that Murphy forced his car off onto the north shoulder. Murphy denied this. In any event, the right rear wheel of the Roth car went off the highway into the gravel on the north shoulder, the car went out of control, skidded down the highway sideways, across the center line, and collided with the Buster car in the south half of the highway. The Buster car was thrown into the south ditch and the Roth and Dawkins cars then collided head-on in the south half of the highway at a point eleven feet west of the point where the Roth and Buster cars collided. The second collision immediately followed the first collision. At the scene, Roth thought he was struck twice by the Buster car.

When the right rear wheel of the Roth car hit the gravel shoulder the Roth and Dawkins cars were seven hundred to eight hundred feet apart, Dawkins' speed was 50 to 55 miles per hour, and he was following Buster at a distance of 50 to 60 feet. At that time, Buster's brake lights came on and Dawkins put his foot on the brake but did not attempt to stop his car. When the Roth car came across the center line, Dawkins was following Buster at a distance of 30 to 50 feet. Dawkins applied his brakes "as hard as you could" when the Roth car was 200 to 250 feet away but was then unable to stop before the collision. Dawkins conceded that "from a distance of seven hundred to eight hundred feet" he could have stopped his car "before coming into a collision with the Roth car" if he "had ridden that brake."

Plaintiff did not submit the question of Dawkins' negligence under MAI No. 17.04. At plaintiff's request, the trial court gave Instruction No. 3 (MAI Nos. 17.01, 17.09, and 19.01), which directed a verdict for plaintiff against Dawkins, and reads as follows: "Your verdict must be for the plaintiff and against defendant Dawkins if you believe:

"FIRST, James McDowell Dawkins was following the 1958 Chevrolet automobile operated by Ronald Joe Buster too closely, and

"SECOND, defendant Dawkins was thereby negligent, and

"THIRD, such negligence directly caused or directly contributed to cause damage to plaintiff."

This assignment of negligence is based upon § 304.017, RSMo 1959, V.A.M.S., which reads in part as follows:

■ "The driver of a vehicle other than those designated in section 304.044 shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway." This statute "was enacted for the protection of every person or vehicle which would reasonably be afforded a measure of protection by the enforcement of the terms thereof. Nothing contained in the section would indicate any intention to restrict its application." Binion v. Armentrout, Mo. Sup., 333 S.W.2d 87, 90. However, appellant Dawkins contends that the trial court erred in giving Instruction No. 3 "because there was no evidentiary support for the factual finding that the distance between Buster and Dawkins was an *efficient cause* of Roth's collision with the Dawkins vehicle." We agree.

A case quite similar on the facts is Garland v. Wilcox (1960), 220 Or. 325, 348 P.2d 1091. Plaintiff Roger Garland was a passenger in a car, driven by his brother, Robert Garland, and traveling in a southerly direction. Defendant Maddy was traveling in a northerly direction. Defendant Wilcox was following Maddy at a distance of three or four car lengths. The Garland car came around a curve at a high rate of speed "and was swerving and skidding so that the rear end of the car was over the center line of the highway." Wilcox "continued on his course without slackening his speed until the Garland and Maddy cars collided, whereupon he applied his brakes and at-

tempted to turn off the highway when his car was struck by the Garland car." The trial court submitted to the jury Wilcox's negligence in following too closely. The Supreme Court of Oregon reversed and remanded, stating: "* * * The question is whether there is evidence which causally connects Wilcox's conduct in closely following Maddy's car with the collision with the Garland car. We are unable to find this causal relation. The defendant Wilcox' car collided with the Garland car which had swerved into the defendant's lane of travel. It is possible to conclude that the collision would not have occurred if Wilcox had slowed down, turned out, or stopped when he first saw the signs of danger. But assuming that it could be shown that defendant was following closely, there is nothing in the evidence to show that his close proximity to the Maddy car was in any way related to the cause of the collision. If it had been shown that because of such proximity Wilcox could not see the dangers ahead and as a result the risk of collision with the oncoming car was increased, or that he was forced to turn out into the path of the oncoming car, or that he did not have sufficient space within which to stop and a collision with the preceding car caused it in turn to collide with an oncoming car, then in such cases, causation would have been established. But there is no evidence in the present case to show that the accident would have happened any differently had the Wilcox car been following Maddy's car at a greater distance. As a matter of fact, there is nothing to show that the accident would not have happened even though Maddy's car was not between Wilcox' and Garland's car."

 We have a similar situation here. Pyles contends that "the distance at which Dawkins was following Buster was the proximate, efficient and legal cause of the collision between Dawkins and Roth, because the danger to Dawkins produced by his proximity to the rear of the Buster automobile prevented Dawkins from focusing his attention on the obviously out of control

Roth automobile in time to have prevented the collision." This theory of recovery would require guesswork on the part of the jury under the evidence in this case. Liability cannot rest "upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence." Probst v. Seyer, Mo.Sup., 353 S.W.2d 798, 802, 91 A. L.R.2d 1252. There is no evidence that Dawkins' car was so close to Buster's car that his view of the Roth car was obstructed. Only by resorting to speculation and conjecture outside of and beyond the scope of the evidence may it be found that Dawkins' conduct in following Buster too closely proximately caused the injuries to Pyles. This being true, the trial court erred "in permitting the jury to consider this aspect of * * * [Dawkins'] conduct as negligence." Garland v. Wilcox, supra, 220 Or. 325, 348 P.2d 1091, 1097.

The case is reversed and remanded for new trial.

All of the Judges concur.