**Lindell RAMSEY, Appellant,**

v.

**Clinton VANCE, Respondent.**

**No. 42608.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 22, 1981.

---

Joseph A. Fenlon, Clayton, for appellant.

Joseph M. Kortenhof, St. Louis, for respondent.

SIMON, Judge.

This appeal involves an accident between a motorcycle, driven by plaintiff, Lindell Ramsey, and a car, driven by defendant, Clinton Vance. The jury in the Circuit Court of St. Louis County rendered a verdict in favor of Vance on Ramsey's claim for damages and in favor of Ramsey on

Vance's counterclaim for damages. Ramsey alone appeals.

On appeal Ramsey raises three issues: first, the trial court erred in refusing to direct a verdict in his favor on the issue of liability at the close of all the evidence; second, the court erred in giving instructions disjunctively charging Ramsey with negligence by "following too closely" or "failure to keep a lookout" and third, the court erred in failing to set aside the verdict. We affirm.

The accident occurred shortly after 7:00 P.M. on Highway 67, also called Lindbergh Boulevard, in Florissant, Missouri. At the time of the accident it was dark and the vehicles' headlights were on. The road was straight. The weather was clear and dry. Highway 67 is a five lane highway consisting of two northbound lanes, two southbound lanes and a center turning lane. Vance, heading north, had stopped in the turning lane and was signaling to make a left turn into the driveway of a shopping area.

Waylon Gammill, a witness for Vance at the trial, was traveling in the southbound curblane. He was driving slowly and signaling to make a right turn. Ramsey was less than ten feet behind Gammill's car. At this point neither Vance, nor his wife seated in the front passenger seat, could see Ramsey or his motorcycle. Gammill signaled Vance to make his turn. As far as Vance knew, Gammill's car was the only vehicle in the southbound lanes. After Vance had begun to make his left turn, Ramsey rapidly accelerated and swung out from behind Gammill. Mrs. Vance saw Ramsey rapidly approaching. When Ramsey was parallel to Gammill, he applied his brakes and Mrs. Vance screamed. Mr. Vance had not yet seen Ramsey. Hearing Mrs. Vance's scream, Mr. Vance accelerated through the rest of the turn. Vance's evasive maneuver was unsuccessful and the motorcycle struck the car. At the time of impact the car was almost completely off the road, in the driveway. In fact, the actual point of impact was in the drive-way. As a result of the accident Ramsey suffered a fractured leg.

1. All references shall be to RSMo. 1969 unless otherwise noted.

Initially, Ramsey contends the trial court erred in failing to grant his motion for a directed verdict as to liability only at the close of all the evidence. Generally, a directed verdict should not be given to a party with the burden of proof where the case depends on oral testimony, since it is the jury's function to pass on oral testimony. *Clayton Brokerage Company of St. Louis v. Lowrance*, 592 S.W.2d 218, 228 (Mo.App.1979); *Bradley v. Buffington*, 534 S.W.2d 571, 574 (Mo.App.1976). There is an exception to this rule for cases in which there remain no questions of fact to be resolved. *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 88 (Mo.App.1976); *Bradley, supra.* However, after reviewing the evidence in the light most favorable to Vance, we conclude that the trial court correctly refused to direct the verdict in Ramsey's favor.

Ramsey argues that the evidence was uncontroverted in establishing that Vance violated a statutory duty to yield the right-of-way to Ramsey. The violation of a statutory duty, absent legal justification or excuse as established the circumstances, is negligence per se. *Bowman v. Ryan*, 343 S.W.2d 613, 622 (Mo.App.1961). Here the controlling statute is § 304.351 (RSMo. 1969),[1] which provides, in pertinent part:

"(6) The driver of a vehicle intending to make a left turn into an alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction when the making of such left turn would create a traffic hazard."

The mere fact that a collision occurred, however, is not proof that Vance violated this statutory duty: "[f]ailure to yield as directed by . . . [§ 304.351] does not in every instance amount per se to negligence." *Anthony v. Jennings*, 368 S.W.2d 533, 538 (Mo.App.1963). In construing this statutory duty, our brethren in the Western District stated:

"One about to make a turn usually has the right to act upon appearances and unless there is a reasonable indication to the contrary, to assume that the driver of the other approaching vehicle will not act negligently and will operate his vehicle in a prudent and lawful manner."

*Carpenter v. Kessner*, 330 S.W.2d 270, 274 (Mo.App.1959). If reasonable minds could have differed in making this determination, then it was correctly submitted to the jury. *Id.*

■ Reasonable minds could have differed whether or not Vance's left turn did create a traffic hazard. Vance testified that there was plenty of room between his car and Gammill's car. He stated that when he began his turn, Gammill's car was 150 to 200 feet away. At this point Ramsey was following Gammill closely and Vance could see only Gammill. Gammill was moving slowly and signaled Vance to go ahead. After Vance began his turn, Ramsey accelerated around Gammill and was unable to stop before crashing into Vance. We conclude that reasonable minds could have believed that Vance's actions did not create an immediate traffic hazard. Therefore the trial court's refusal to direct the verdict for Ramsey was proper.

■ Next we shall consider Ramsey's arguments with respect to the instructions. In reviewing the trial court's submission of instructions we must consider the evidence in the light most favorable to Vance, the prevailing party. Any reasonable inferences arising from the evidence will also be considered in the light most favorable to Vance. Ramsey's evidence will be disregarded unless it tends to support the grounds for submitting the instruction. *Welch v. Hyatt*, 578 S.W.2d 905, 912 (Mo. banc 1979).

Ramsey contends that the trial court erred in submitting a contributory negligence instruction and a counterclaim instruction that instructed the jury that Ramsey could be found negligent either for "failing to keep a careful lookout" or for "following the Gammill car too closely." Our review indicates that the evidence supported both of the submissions.

■ To support the submission of the "lookout" instruction there must be substantial evidence (1) that Ramsey saw, or in the exercise of the highest degree of care, could have seen the Vance car, and (2) that Ramsey, when he saw or could have seen the Vance car, could have taken action to avoid the accident or injury. *Kaelin v. Nuelle*, 537 S.W.2d 226, 233 (Mo.App.1976). Ramsey argues that there was no evidence that he could have seen Vance making his turn in time to take evasive action and that once he saw the car he did everything possible to avoid hitting it.

We disagree. The evidence supports the finding that Ramsey did not exercise the highest degree of care. Vance stated that when he began his turn he was 150 to 200 feet from Gammill's car. Ramsey was still behind Gammill and there were no cars in the inside southbound lane to Ramsey's left. After Vance had begun his turn, Ramsey accelerated around Gammill's vehicle. The jury could have found that Ramsey should have seen Vance beginning his turn. Had Ramsey seen Vance at this point, he could have easily avoided a collision. Thus, on these facts, the trial court was correct in submitting the "lookout" instructions to the jury.

On the issue of the "following too closely" instruction, Ramsey contends that it applies only to vehicles traveling in the same direction at substantially the same speed. Ramsey also argues that there was no evidence that he was following Gammill's car too closely. Finally, he argues that there was no evidence that his following Gammill too closely in any way contributed to the accident.

■ All of these arguments are without merit. The "following too closely" instruction is based on § 304.017 which reads, in pertinent part:

"The driver of a vehicle . . . shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway."

Our Supreme Court has held that this section "was enacted for the protection of every person or vehicle which would reasonably be afforded protection by the enforcement of the terms thereof." *Binion v. Armentrout*, 333 S.W.2d 87, 90 (Mo.1960). See also *Pyles v. Roth*, 421 S.W.2d 261, 262 (Mo.1967). Thus, the "following too closely" instruction's application is not limited only to rear-end collision situations.

There was substantial evidence from which the jury could have concluded that Ramsey followed Gammill's car too closely. Mrs. Vance testified that when she first saw Ramsey's motorcycle behind Gammill's slowly moving car it looked like the two were attached. Gammill stated that Ramsey was less than ten feet from the back of his car.

The only remaining question with respect to the "following too closely" instruction is whether Ramsey's closeness to the Gammill car contributed to the accident with Vance. We believe that the jury could have found that it did. As a result of Ramsey's closeness to Gammill's car, Ramsey was unable to see the traffic ahead and/or was not visible to oncoming traffic. Had Ramsey been able to see Vance, Ramsey would not have accelerated around Gammill's car and collided with the Vance car.

Ramsey's last point essentially restates his first contention. He argues that the trial court erred in failing to set aside the verdict for Vance on the grounds that he failed to yield the right-of-way to Ramsey. We have already held this allegation to be without merit.

The judgment is affirmed.

SATZ, P. J., and SMITH, concur.