HOUSEHOLD FINANCE COMPANY, INCORPORATED, Plaintiff-Appellant,

v.

Audie WATSON and Mary Watson, Defendants-Respondents.

No. 9686.

Missouri Court of Appeals, Springfield District.

April 3, 1975.

Charles M. Wesley, Waynesville, for plaintiff-appellant.

No appearance for defendants-respondents.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

FLANIGAN, Judge.

This is an action on a promissory note, tried without a jury. The petition alleged that the two defendants and one Martin L. Aaron made and delivered to plaintiff their note in the principal amount of $2,610.73, payable in 48 monthly installments. A copy of the note was attached to and made a part of the petition. The petition further alleged that plaintiff was the owner and holder of the note; that the note was in default; that by reason of an "acceleration clause" the plaintiff was entitled to

the unpaid balance of the principal, accrued interest and reasonable attorney's fees; that "after allowing all just credits and payments on the note" the unpaid balance and accrued interest amounted to $2,250.28. Judgment was prayed for that amount, together with interest to date of judgment, attorney's fees and costs.

The answer of the defendants consisted of a general denial.

Plaintiff, a self-described "corporation engaged in the business of financing," produced only one witness, Harry Enderle, who was senior assistant manager of plaintiff's office which was located at St. Robert, Missouri. Enderle testified that he had with him the "official records" of plaintiff. Plaintiff's Exhibit 1 was the note itself and plaintiff's Exhibit 3 was the original ledger card showing payments which had been made on the note. Both exhibits were received in evidence.

The defendants introduced no evidence.

Neither side invoked Rule 73.01(1)(b), V.A.M.R., to obtain a statement of findings of facts or grounds for decision.

■ The court entered a judgment dismissing the petition "for failure of plaintiff to make a prima facie case." The remarks of the court, contained in the transcript, reveal that the basis for the judgment was that the plaintiff produced no evidence that the defendants signed the note. Such basis was wrong. "Unless specifically denied in the pleadings each signature on an instrument is admitted." § 400.3–307, V.A.M.S. See also Rule 55.23, V.A.M.R. Defendants' answer, which stated simply that "defendants deny the allegations contained in (each paragraph of) plaintiff's petition," did not constitute a "specific" denial of their signatures. Thus execution of the note was confessed. Securities Investment Company v. Hicks, 444 S.W.2d 6, 7[1] (Mo.App.1969); Universal Printing Company v. Sayre & Fisher Company, 501 S.W.2d 180, 183[4]. (Mo.App. 1973).

Section 400.3–307(2), V.A.M.S., provides: "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

■ Plaintiff-appellant, in its brief, makes a sound attack upon the reasoning of the trial court and asks this court to enter judgment for plaintiff in accordance with its prayer. But the matter is not so simple. Indeed, if the trial court reached the right result, but for the wrong reason, this court must affirm. State ex rel. Pope v. Lisle, 469 S.W.2d 841, 842[1] (Mo.App. 1971); White v. Smith, 440 S.W.2d 497, 512[21] (Mo.App.1969).

The scope of the appellate review of this non-jury case is defined in Rule 73.01(3), V.A.M.R., under which this court must review the case upon both the law and the evidence as in suits of an equitable nature, giving due regard to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 84.14, V.A.M.R., requires this court to make a final disposition of the case "unless justice otherwise requires." For reasons to be stated, this court finds that justice requires reversal and remand.

On Exhibit 1, stamped in ink, and contained in a box, is the following legend:

"Household Finance Corporation, Inc.

PAID

Thank You."

Across the area occupied by the box there is a line of ink, a scrawl, somewhat resembling two n's. The scrawl does not interfere with the legibility of the stamped legend. To the eye of an untrained examiner it is not apparent whether the scrawl or the stamped legend was first placed upon the note.

According to Enderle, Exhibit 3 showed that the note had not been paid and that

the amount of principal and interest due, at the date of trial, was $2,504.15.

Exhibit 1 and Exhibit 3 had been forwarded to Enderle from plaintiff's office in Michigan City, Indiana. Enderle had no knowledge with respect to the markings on the note, "as to why that had been marked paid and then lined through." He did testify that if the note had been paid that fact would have been reflected on Exhibit 3, and it was not.

Section 400.3–601, V.A.M.S., reads, in part, as follows:

"(1) The extent of the discharge of any party from liability on an instrument is governed by the sections on

(a) payment or satisfaction (section 400.3–603); or

(b) . . .

(c) cancellation or renunciation (section 400.3–605); or

(d) through (i) . . . .".

■ Exhibit 1 is "an instrument." § 400.3–102(1)(e), V.A.M.S.; § 400.3–104(2)(d), V.A.M.S.

■ Exhibit 1 bears the legend "Paid." Payment is an affirmative defense,[1] Rule 55.08, V.A.M.R., and the defendants did not plead payment. However, Exhibit 1 was plaintiff's exhibit and "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . . " Rule 55.33(b), V.A.M.R.

■ On Exhibit 3 the name of Martin L. Aaron, the unsued signer of Exhibit 1, is typed, and an Indiana address appears for him. The names of the two defendants appear thereon in ink, together with their Missouri address. On Exhibit 1 Aaron's name is listed first and on a line above the names of the defendants. Exhibit 1 labels defendants "co-makers." The note was executed in Indiana.[2] Referring to Exhibit 1, Enderle said: "This is the note with Martin Aaron as the principal maker and Audie and Mary Watson as co-makers." It may be, though not implicit in this opinion, that defendants were accommodation makers. "Once the instrument is paid, the liability of the accommodation party is discharged." Marcus v. Wilson, 16 Ill.App.3d 724, 306 N.E.2d 554, 559[4] (1973).

Section 400.3–603, V.A.M.S., reads in part:

"(1) The liability of any party is discharged to the extent of his payment or satisfaction to the holder . . .

(2) Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. . . . "

It seems reasonable to believe that if the defendants themselves had paid Exhibit 1, they would have provided evidence to that effect. But if Exhibit 1 was paid, and Aaron[3] would seem a logical source, de-

---

[1.] See UCC Comment 2 under § 400.3–307, V.A.M.S., which reads in part: "Once signatures are proved or admitted, a holder makes out his case by mere production of the instrument, and is entitled to recover in the absence of any further evidence. The defendant has the burden of establishing any and all defenses, not only in the first instance but by a preponderance of the total evidence."

In Anderson, Uniform Commercial Code, 2d Edition, § 3–307:9, p. 895, it is said: "The defendant has the burden of proof of payment, as soon as the instrument is produced *and would appear on its face to be unpaid.*" (Emphasis added).

"If a note bears on its face evidence of payment, the burden of the defendant to prove payment is satisfied, and the burden then is on the plaintiff to explain the circumstances and to show that in fact the note has not been paid." 12 Am.Jur.2d Bills & Notes § 1220, p. 250.

2. Indiana adopted the Uniform Commercial Code (Laws Indiana 1963, § 317) effective July 1, 1964.

3. The following language appears in the UCC Comment under § 400.3–601, V.A.M.S. (Vol. 20B V.A.M.S. pp. 240–241): "Under Section 3—415 on accommodation parties an accom-

fendants might not have had knowledge of that fact.

◼ Exhibit 1 was in the possession of plaintiff. "The maker of a note does not, however, merely by leaving it in the possession of the payee when paying it, lose the right to assert that the note was discharged by the payment." 11 Am.Jur.2d Bills & Notes § 971, p. 1022. Though pre-UCC cases, cited in Note 56 to § 400.-3–603, V.A.M.S., indicate that a note is presumed unpaid while in the possession of the payee, no such language appears in § 400.3–603 or the UCC Comment thereunder.

Plaintiff is engaged "in the business of financing." The usual reason for stamping a note "Paid" is payment itself, but here plaintiff offered no explanation for the stamp. It might be argued that Exhibit 3 is consistent[4] with a finding of non-payment. But unless the scrawl nullifies the stamp on Exhibit 1, the latter conflicts with Exhibit 3. At least one of them is erroneous but this court lacks the information to identify the defective one. Plaintiff, and perhaps plaintiff alone, is in a position to explain the discrepancy, and no explanation appears.

But does the scrawl devitalize the stamp? In 1875 the Supreme Court of Illinois made this statement: "The words stamped on the note by the Cook County National Bank were erased, by having a pen drawn through them before it was presented to Lowenthal, and this, in connection with the fact that the note was presented as a valid subsisting note, we regard as sufficient to overcome any notice of payment that might otherwise have been furnished by the words stamped on the note. Being erased, the reasonable inference would be they had been placed there by mistake; and Pickett's possession was not, of itself, a circumstance to arouse suspicion that payment had been made." International Bank v. Bowen, 80 Ill. 541, 546.

◼ But this court is unpersuaded that the scrawl deserves that efficacy. It is the product of an unknown hand, acting at an unknown time, at an unknown place, and for a reason, if any, unknown. It is entitled to no such deference, absent some supportive evidence. It alone should not be dispositive of this appeal. McElroy v. Caldwell, 7 Mo. 587 (1842); Hays v. Odom, 79 Mo.App. 425, 428 (1899); Meffert v. Lawson, 289 Mo. 337, 233 S.W. 31, 38[6] (1921); Hanna v. Parrish, Okl., 317 P.2d 745, 748 (1957); Pueblo Bank & Trust Company v. McMartin, 31 Colo.App. 546, 506 P.2d 759, 762 (1972); Clarendon County, S. C. v. Curtis, 46 F.2d 888, 890[4–6] (4 Cir. 1931); Cohen v. Kaufman, 89 Cal.App.2d 463, 200 P.2d 834, 836[3 & 4] (1948); In Re Philpott's Estate, 169 Iowa 555, 151 N.W. 825, 827[7, 8] (Iowa, 1915); Fox v. Mitchell, 302 Mich. 201, 4 N.W.2d 518, 521[1] (1942); First National Bank of Fairbanks v. Taylor, 488 P.2d 1026, 1031[3] (Alaska, 1971).

---

modation maker or acceptor, although he is primarily liable on the instrument in the sense that he is obligated to pay it without recourse upon another, has himself a right of recourse against the accommodated payee, and his reacquisition or discharge leaves the accommodated party liable to him. The accommodated payee, although he is not primarily liable to others, has no right of action or recourse against the accommodation maker, and his reacquisition or discharge may discharge all parties." See also 11 Am.Jur.2d Bills & Notes § 963, p. 1017.

4. Aside from the scrawl on Exhibit 1, the inconsistency between Exhibit 1 and Exhibit 3

is a subject dealt with in Steele v. Woods, 327 S.W.2d 187, 197[14] (Mo.1959): "Having put the record in evidence, plaintiff could not impeach it as such, but she could contradict the facts which were related in such record. But it is suggested that where there are statements favorable to the defendant as to the positive existence of certain affirmative facts which call for a denial or explanation, and the plaintiff is in a position and has opportunity to make such denial or explanation and fails to do so, then the existence of such facts must be assumed to be true in assessing the sufficiency of the evidence. . . ."

Under § 400.3–605, V.A.M.S., the holder of an instrument may, even without consideration, discharge any party "in any manner apparent on the face of the instrument." It is true that under that statute "neither cancellation nor renunciation without surrender of the instrument affects the title thereto."

■ "A cancellation made unintentionally, or under mistake, or without the authority of the holder, is inoperative." 11 Am.Jur.2d Bills & Notes § 906, p. 951. But cancellation and payment are alternative methods of discharging a party from liability on an instrument. § 400.3–601, V. A.M.S. Cancellation does not require consideration, § 400.3–605, and there is nothing in § 400.3–603, with regard to payment, which requires cancellation.

■ If in fact Exhibit 1 has been paid, plaintiff's cause should fail. If Exhibit 1 has not been paid, and if the stamp thereon was unintentional or under a mistake or without the authority of plaintiff, a different result is due.

■ Although this court has a duty to dispose finally of a case before it on appeal, if possible, "this presupposes a record and evidence upon which we can rule with some degree of confidence in the reasonableness, fairness and accuracy of our final conclusion." In Re I.M.J., 428 S.W.2d 18, 22[5] (Mo.App.1968); Phelps v. Watson-Stillman Company, 365 Mo. 1124, 1132, 293 S.W.2d 429, 435 (1956).

■ "It is sufficient to state that in the present posture of the record, the theories of the parties are not completely articulated and this court is left with the alternative of deciding the case on the the basis of various presumptions and the burden of proof. . . . In other words, the burden of proof and the indicated presumptions may or may not result in assumptions plainly contrary to the fact." Saville v. Bradshaw, 359 S.W.2d 676, 679 (Mo.1962). "In a situation such as the present one,

where it is impossible to render a final judgment because the principal issue was not adequately developed below, and the record indicates that the necessary evidence may be available, a wise exercise of our discretion requires that the judgment be reversed and that the case be remanded for a new trial." In re M—— P—— S——, 342 S.W.2d 277, 283[12] (Mo.App.1961).

■ This court has the power to remand the case for a new trial even if the plaintiff failed to make a submissible case, where "all pertinent factual information was not presented upon trial." Hood v. M. F. A. Mutual Insurance Company, 379 S. W.2d 806, 812[12] (Mo.App.1964); Bolhofner v. Jones, 482 S.W.2d 80, 85[7] (Mo.App.1972).

Accordingly, the judgment dismissing plaintiff's petition is reversed, and the cause is remanded for new trial.

All concur.