**PENTAGON FEDERAL CREDIT UNION, Plaintiff-Respondent,**

v.

**James EDWARDS, Jr., Defendant-Appellant.**

No. 38812.

Missouri Court of Appeals, St. Louis District, Division Two.

Aug. 1, 1978.

E. A. Walton, Jr., Freeman, Whitfield, Montgomery & Walton, Michael B. Calvin, St. Louis, for defendant-appellant.

James E. Hawk, Jr., Clayton, for plaintiff-respondent.

STEWART, Presiding Judge.

Action by plaintiff, credit union, against defendant, one of its members, for return of promissory note and security agreement mistakenly marked paid and sent to defendant; for an equitable lien upon defendant's automobile; for money judgment and for an order of foreclosure of lien and sale of automobile and application of proceeds to the delinquency on the note.

In this court tried case plaintiff had judgment including interest and attorney fees in the sum of $3,832.96; defendant was ordered to deliver note, security agreement and certificate of title on the automobile to plaintiff. The court established an equitable lien upon the automobile and ordered foreclosure with proceeds to be applied against the money judgment and for execution against defendant for any unpaid balance. On this appeal we affirm.

Preliminarily defendant contends the court erred in denying his request for jury trial asserting that the action was one at law and not in equity. In this one count action plaintiff, in addition to a money judgment, sought the return of documents mistakenly delivered to defendant and an equitable lien all of which was granted. A petition may partake of the attributes of both legal and equitable actions. The petition here sought both legal and equitable relief. To have entered a judgment for only the balance due on the note would not have given plaintiff complete and adequate relief. Under the petition in this case the court properly undertook to try the case in equity without a jury "subject to proof of the equitable features necessary to authorize a final disposition of the case as one in equity." "Upon the proof of the plaintiff's right to an equitable lien [and here return of the documents], jurisdiction of the court

to dispose of the case as one in equity was fully established." *Goldman v. Ashbrook,* 262 S.W.2d 165, 168[5] (Mo.App.1953). Equitable jurisdiction having attached, the court was then authorized to dispose of all of the issues and do complete justice in the case. *Goldman v. Ashbrook, supra.* The trial court did not err in denying defendant's request for a jury trial.

This litigation had its genesis on April 20, 1973 when defendant, as a member of plaintiff credit union, made a loan of $3,600.00 for the purpose of purchasing an automobile. He executed a promissory note and security agreement on the automobile. The note provided for monthly payments of $114.45. This loan was given account number 217524–10–7. The records of plaintiff show that 11 payments were made on the loan. The last payment was March 18, 1974. The plaintiff allots one basic account number to each member of the credit union with a suffix indicating the various transactions such as his savings accounts and loan accounts. In March of 1974 plaintiff discovered that because of a merger with Okinawa Credit Union defendant had two account numbers. By letter dated April 1, 1974 defendant was notified that the loan account for the April 1973 loan had been transferred to number 249133, his other loan account. An entry was made in the computer closing out account number 217524–10–7. This entry was forwarded to the file room. The file room, noting that account 217524–10–7 was closed, marked

the note and security agreement paid and sent those documents along with the title to defendant. Plaintiff's records show the last payment made by defendant to have been March 18, 1974. The principal balance on the note at that time was $2,629.57. In May of 1974 a form letter was sent to defendant advising that they had not heard from him and asking that he contact plaintiff. Another letter was sent in July. Plaintiff received no response to the letters and on July 22 a call was made to defendant's home and a message was left for defendant to call plaintiff's office. On July 24 another letter was sent advising defendant that plaintiff had not received payment on the note. On August 9 a letter was sent advising that suit would be filed if payment was not received. On September 25 a wire was sent requesting that defendant make payment of $501.05 to bring his loan current or that plaintiff would proceed with repossession. Defendant made no response to these communications. On May 16, 1975 defendant received a letter from plaintiff's counsel. Defendant did not respond to that letter. Suit was filed in July of 1975.

Defendant answered by way of general denial and affirmatively, defendant's defense seems to be that if plaintiff made a mistake it must bear the loss.[1] At the trial defendant testified that the balance on the note had been paid in full by his stepfather in March of 1974. His stepfather who lived in St. Louis died in June of 1975. He

---

1. Pertinent portions of the answer read as follows:

"2. Any alleged mistakes made by plaintiff were purely unilateral in nature and equitable relief is not afforded thereto;

3. Said unilateral mistakes as are alleged in plaintiff's petition were due to plaintiff's gross and culpable negligence and equitable relief is barred thereby;

4. Plaintiff had within his reach the means of ascertaining the true state of facts, and without inducement by defendant, neglected to avail itself of his opportunity for information— information which was solely within plaintiff's control and management—and any such unilateral mistakes by plaintiff as alleged in its petition are thus not afforded equitable relief;

5. The true state of facts is determined by the instruments surrounding the transactions

as alleged in plaintiff's petition and the court of equity is not empowered to go beyond those instruments in ascertaining the facts; and such facts as alleged by petitioner afford plaintiff no relief as a matter of law;

. . . .

8. The mistake alleged in plaintiff's petition is not capable of remedy by the court in equity as it constitutes an alleged past wrong;

9. Plaintiff is barred by laches in that he neglected for an unreasonable and unexplainable length of time to seek relief from its alleged unilateral mistake;"

. . . .

12. Plaintiff does not seek to do equity by returning the parties to the alleged status existing prior to plaintiff's alleged mistake, but rather seeks to place defendant in the position of a debtor in default at law."

testified that his stepfather showed him a receipt for the payment.[2] He did not get the receipt from his stepfather and had no evidence of any payments made except the note that was marked paid. He "threw away all that stuff" after he received his title.

■ In this court tried case the judgment of the trial court will not be reversed if there is substantial evidence to support the judgment and it is not against the weight of the evidence and does not erroneously declare or apply the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). As directed in Rule 73.01 we give due regard to the "opportunity of the trial court to have judged the credibility of witnesses."

■ The next two issues raised by defendant are directed to the question of the burden of proof with respect to the alleged mistaken cancellation of the note and the sufficiency of the evidence to make such a finding. These points can be consolidated into one issue. In the court tried case we determine whether upon a view of all of the evidence there was sufficient substantial evidence to support the judgment of the trial court. *See Miller v. Gayman,* 482 S.W.2d 414, 418 (Mo.1972). We review a few general principles applicable to this case. Essential to plaintiff's cause to obtain restoration of the note and security agreement is the non-payment of the note. Where non-payment is an essential element of plaintiff's case payment is an affirmative defense and should be pleaded. *Household Finance Co. v. Watson,* 522 S.W.2d 111, 114 (Mo.App.1975); Rule 55.08. In this case, though not pleaded, the issue of payment was tried by the implied consent of the parties and will be treated as raised by the pleadings. *Household Finance Co. v. Watson,* 522 S.W.2d at 114.

■ It has long been the rule that possession by the maker of a note, past due, is strongly corroborative of the defense of payment. *Stephenson v. Richards,* 45 Mo. App. 544, 550 (1891). Such possession is not conclusive. The cancellation of evidence of debt which is made unintentionally, or under mistake or without the authority of the holder does not discharge the debtor. *Household Finance Co. v. Watson,* 522 S.W.2d at 116.

■ The plaintiff in this case presented evidence that its records revealed a balance of $2,629.57 due on the note made by defendant; that upon consolidation of the account number originally given the transaction and the closing of that account the documents related to the transaction were mistakenly marked paid and mailed to defendant. Defendant testified that his stepfather had paid the note. The primary issue was one of fact and its determination was one of credibility. It is apparent that the trial court chose to believe plaintiff's evidence that the note was unpaid and that the note was marked paid and sent to defendant by mistake. Defendant produced no tangible evidence of payment except the note. He had known for better than a year before his stepfather's death that plaintiff was making claim for a substantial balance on the note but did not obtain the receipt he claimed his stepfather had in his possession. Giving due deference to the trial court's ability to determine the question of credibility we cannot say that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence. *Lewis v. Home Land & Loan Co.,* 173 S.W.2d 53 (Mo.1943).

■ Defendant, in his fourth point, attempts to bring this case within the law with respect to the reformation of instruments contending that equity will not correct a unilateral mistake. The court was not asked and it did not reform the contract between the parties. As said above when an instrument evidencing a debt is marked paid and placed in the hands of the debtor

---

**2.** Defendant testified:

"Q. Did your stepfather provide you with a document showing you whether or not he did pay that particular account?

MR. HAWK: Object to the question.

THE COURT: Overruled.

A. Yes, my stepfather had a document, showed me the account was paid. He called me and told me I could pick it up or he would put it in the mail. I told him, just hold it, when I come home on the weekend, I'd pick it up."

by mistake it does not operate to discharge the debtor. *Household Finance Co. v. Watson, supra.* The court did not reform but enforced the contract between the parties. The principles relied upon by defendant are not applicable to this case.

Defendant's fifth point reads:

"That the trial court erred in ordering that the lien of the plaintiff-respondent be foreclosed and the said automobile be taken and sold, when the purpose of reformation is to restore the contract to the original intent of the parties, before the mistake and default, and not after said default, which results in foreclosure."

He again mistakes the nature of the action brought by plaintiff. What we have said with respect to defendant's fourth point relied on is equally applicable here.

The judgment of the trial court is not against the weight of the evidence but is supported by substantial evidence; it does not misinterpret or misapply the law of the case. The judgment of the trial court is affirmed.

REINHARD and STEPHAN, JJ., concur.